# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ERIC PRINCE HOLTON,

        Plaintiff,

v.                                      Case No. 07-CV-402

CATHY JESS, CAPTAIN SCHOLKE,
WARDEN CATHERINE J. FARREY,
JOHN SCHETTLE, and BARBARA A. DE LAP,

        Defendants.

---

# DECISION AND ORDER

Plaintiff Eric Prince Holton filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. At all times relevant to his complaint, the plaintiff was a state prisoner incarcerated at Dodge Correctional Institution (DCI), the Sheboygan County Detention Center, and New Lisbon Correctional Institution (NLCI). The plaintiff is proceeding on Eighth Amendment claims regarding medical care, DOC and prison policies, and adequate dental staffing at NLCI. This matter is now before the court on the plaintiff's motion to compel, the plaintiff's motion for partial summary judgment and to amend the caption, the defendants' motion to strike the plaintiff's proposed findings of fact,[1] and the defendants' motions for summary judgment.

---

[1]The plaintiff filed a statement of undisputed facts with his motion for partial summary judgment. As part of their response to the motion, the DOC defendants filed a motion to strike the plaintiff's proposed findings of fact because they did not contain citations to the record. The plaintiff then filed an amended statement of undisputed facts containing record citations. As a result, the defendants' motion to strike will be denied as moot.

## PLAINTIFF'S MOTION TO COMPEL

On June 19, 2008, the plaintiff filed a motion to compel asking the court to order defendant Captain John Scholke to respond to the plaintiff's requests for production of documents. The plaintiff also asks the court to order the DOC defendants to supplement their responses to two of his requests for production of documents.

Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then personally consult with the opposing party and attempt to resolve their differences. Civ. L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). The movant "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The local rules require a written statement that, "after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord." Civil L.R. 37.1 (E.D. Wis.). A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court. *EEOC v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citation omitted).

Case 2:07-cv-00402-JPS   Filed 03/12/09   Page 2 of 23   Document 116

The plaintiff has not provided the required statement regarding an attempt to personally consult with any of the defendants about the discovery disputes before filing his motion. The court can also easily resolve the plaintiff's motion to compel on the merits.

The plaintiff argues that Captain Scholke failed to provide responses to his requests for production of documents. In response, Captain Scholke argues that the plaintiff's motion is now moot because his responses to the plaintiff's document requests were hand delivered to the plaintiff on June 24, 2008, less than a week after the plaintiff filed his motion. Accordingly, the court will deny plaintiff's motion to compel Captain Scholke to provide discovery responses.

The plaintiff also asks the court to compel the DOC defendants to supplement their responses to two document requests. First, Request No. 6 in the plaintiff's first set of discovery requests to the DOC defendants seeks "any or all consent decrees entered against the Wisconsin D.O.C. in regards to the health care facilities" at NLCI. The DOC defendants responded that the request was "vague and ambiguous" and therefore would require speculation to respond. The court agrees that the description is vague and cannot compel the DOC defendants to produce something undefined.

Second, Request No. 3 in the plaintiff's second set of document requests to the DOC defendants asked for Dr. Schettle's curriculum vitae. The DOC defendants responded that the document does not exist. The plaintiff argues in support of his motion that the DOC defendants must have Dr. Schettle's "credentials" as a dentist.

3

However, the court notes that the plaintiff did not ask for Dr. Schettle's "credentials" or for proof of his license as a dentist. Rather, the plaintiff asked for a curriculum vitae, which is a specific document. Given that Dr. Schettle has worked for the DOC for almost two decades, it is quite possible that he does not have a current curriculum vitae. The court cannot compel the DOC defendants to produce a document that does not exist. For the foregoing reasons, the plaintiff's motion to compel regarding the DOC defendants will also be denied.

## PLAINTIFF'S MOTION TO AMEND CAPTION

The plaintiff seeks to amend the caption because it has been established that Cathy Jess, not John Bett, was the warden of DCI at the times relevant to the plaintiff's complaint. He has also, through discovery, identified John Doe 1 and John Doe 2. The defendants concur with the replacement and identifications. The court will grant the plaintiff's motion and update the caption and the docket to replace John Bett with Cathy Jess and to reflect that John Doe 1, the dentist at DCI, has been identified as John Schettle and John Doe 2, the dental administrator, has been identified as Barbara A. De Lap, the DOC Dental Coordinator.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower the court to enter judgment as it sees fit. *See* 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). The

court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957). Cross-motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. *See M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). The proper procedure is to assess the merits of each summary judgment motion independently. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See* 10A Charles Alan Wright et al. § 2720 at 335.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT BY DOC DEFENDANTS

The plaintiff has filed a motion for partial summary judgment regarding his claims against John Schettle, Barbara A. De Lap, Cathy Jess, and Catherine J. Farrey (the "DOC defendants"). He argues that he has presented evidence entitling him to summary judgment on the following claims: (1) an Eighth Amendment claim against John Schettle for deliberate indifference to his serious dental need; (2) a claim against Cathy Jess and Barbara De Lap that a policy that denture repairs or replacements were not available for inmates on Administration and Evaluation (A&E)

6

status at DCI was unconstitutional; and (3) a claim against Catherine Farrey and Barbara De Lap that they violated the plaintiff's constitutional rights by not maintaining an adequate dental staff at NLCI. The DOC defendants have also moved for summary judgment on the same claims.

## 1. Background

John Schettle is a dentist employed by the DOC who worked at DCI during all time relevant to the plaintiff's claims. (DPFOF ¶¶ 10-11). Dr. Schettle conducted the plaintiff's initial dental screening examination on August 10, 2005, at DCI. (PPFOF ¶ 1). At that time, Dr. Schettle was aware that the plaintiff's dentures were broken and causing the plaintiff problems. *Id.* He also noted that the plaintiff's lower denture "needs a partial repair." *Id.*

On August 29, 2005, the plaintiff submitted a dental services request indicating that he was in pain and reminding Dr. Schettle of his promise to repair the plaintiff's dentures. (PPFOF ¶ 2). The plaintiff received a response from Dr. Schettle on August 31, 2005, telling the plaintiff that dental services for A&E inmates are limited to only extractions. (PPFOF ¶ 3). Under DOC Policy POC-14, dental services for inmates on A&E status include "emergency situations" and "urgent dental problems," but denture repair or replacements are generally not available until after transfer to other institutions. (PPFOF ¶ 4). According to Wisconsin Administrative Code DOC 400:02, "urgent dental care" includes dental conditions "which if not completed in a timely manner could result in undue pain and suffering." (PPFOF ¶ 5). Also, according to Wisconsin DOC 400:02, the wardens of institutions

7

and the dental director are responsible for the development and implementation of policies and procedures, as well as compliance. (PPFOF ¶ 6).

On September 9, 2005, the plaintiff was transferred to the Sheboygan County Detention Center. (PPFOF ¶ 8). The plaintiff requested treatment for his broken dentures, and he received a response denying his request for treatment and advising him that the DOC would take care of the plaintiff's dental needs at his next institution.[2] (*Id.*)

On October 11, 2005, the plaintiff was transferred to NLCI. (PPFOF ¶ 9). The plaintiff again requested dental treatment, but he received a response stating that there was no staff dentist at NLCI. (*Id.*) The plaintiff was seen by a dentist on November 15, 2005, who told him she would repair his dentures but needed to order special materials. In December 2005, the plaintiff submitted a follow up dental service request and was told that the dentist he saw in November no longer worked for the DOC and that he would have to wait until the second week of January 2006, to have his dentures repaired. (*Id.*) The plaintiff's bottom partial denture was repaired by the first week of February 2006. (PPFOF ¶ 10).

The DOC defendants do not dispute any of the plaintiff's proposed findings of fact. Nevertheless, they argue that the facts alleged by plaintiff do not entitle him to summary judgment. They also assert additional proposed findings of fact. The DOC defendants ask the court to draw the inference from the plaintiff's medical records

---

[2]The DOC defendants responded to this proposed finding of fact that they "have no independent knowledge to respond to this proposed finding because the exhibit referred to is not a Department of Corrections document." (DOC defendants' response to plaintiff's statement of undisputed facts)

Case 2:07-cv-00402-JPS   Filed 03/12/09   Page 8 of 23   Document 116

that the plaintiff's dental condition in August 2005 was not serious and did not need immediate attention. (DPFOF ¶ 5). Upon his examination of the plaintiff in August 2005, Dr. Schettle determined that the plaintiff's lower dentures were in need of "partial repair." (DPFOF ¶ 4). The DOC defendants assert that "[t]here is no evidence in plaintiff's dental records to indicate that a delay in fixing his lower dentures caused any serious medical condition." (DPFOF ¶ 6). The DOC defendants also assert, based on the plaintiff's deposition testimony, that the plaintiff's denture concerns were addressed "immediately" when the plaintiff arrived at NLCI in October 2005 and, while at NLCI, the plaintiff was given ibuprofen for his pain. (DPFOF ¶¶ 1-2).

## 2. Eighth Amendment Claim

The plaintiff contends that Dr. Schettle violated DOC regulations and the plaintiff's Eighth Amendment rights when he classified the plaintiff's need for a partial repair of his lower dentures as a routine dental need and advised the plaintiff that the dentures would be repaired at his next DOC institution. Dr. Schettle argues that he exercised his professional dental judgment when he classified the plaintiff's denture repair as "routine" and thus followed DOC policy when he determined that the plaintiff's dentures would be repaired at his next DOC institution.

Conduct of prison officials that demonstrates deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain and violates the Eighth Amendment's prohibition of cruel and unusual punishment. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). To state an

9

Eighth Amendment claim, a prisoner must show that: (1) he had a serious medical need; and (2) the defendants were deliberately indifferent to it. *Id.* An objective serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for treatment. *Id.* The Seventh Circuit has indicated that dental care is one of the most important medical needs of inmates. *Id.* Deliberate indifference is more than "mere negligence." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). It is also more than gross negligence or medical malpractice. *Haley v. Gross*, 86 F.3d 630, 644 (7th Cir.1996); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir.1990). Instead, deliberate indifference requires a certain culpable mental state comparable to criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). It is a subjective standard, requiring that the defendant actually knew of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety. *Farmer*, 511 U.S. at 837.

The court concludes that the plaintiff's need for denture repairs constituted a "serious medical need" under the Eighth Amendment because Dr. Schettle diagnosed the plaintiff as needing treatment. *See Wynn*, 251 F.3d at 593 (An objectively serious medical need is one that has been diagnosed as mandating treatment.). However, despite the parties' arguments improperly equating the two standards, there is nothing to suggest that just because something is a serious dental need for the purposes of the Eighth Amendment that it automatically constitutes an "emergency situation" or "urgent dental problem" that required

10

immediate repair while the plaintiff was at DCI on A&E status. An objectively serious medical need under the Eighth Amendment requires treatment, but it does not necessarily have to be immediate. In contrast, "emergency situations" and "urgent dental problems" merit immediate treatment under DOC and DCI regulations because they are more severe.

The court next considers whether the plaintiff has shown that Dr. Schettle was deliberately indifferent to his serious dental need. On plaintiff's motion for partial summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. Dr. Schettle avers that he examined the plaintiff and concluded that his bottom dentures were in need of partial repair. Dr. Schettle concluded, though, that the repair of the plaintiff's dentures constituted a routine or chronic dental need and noted that the plaintiff should request treatment at his next institution. This was Dr. Schettle's professional judgment as a dentist. The plaintiff cannot succeed on summary judgment based on his disagreement with Dr. Schettle's exercise of his professional judgment. Disagreement with medical (or dental) professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

In support of their motion for summary judgment on this claim, the DOC defendants argue that the evidence shows that Dr. Schettle was not deliberately indifferent to the plaintiff's serious dental need. The DOC defendants assert, based on the affidavit of Dr. Schettle, that the condition of the plaintiff's dentures was not

11

an emergency or even a serious situation and that the plaintiff could request treatment at the next institution. (DPFOF ¶ 16). Defendants assert that the plaintiff's treatment needs were discussed with him and he was told how to access dental care at DOC institutions.

Viewing the facts in the light most favorable to the plaintiff, the plaintiff has not established deliberate indifference by Dr. Schettle. The plaintiff maintains that Dr. Schettle told the plaintiff he would repair his dentures while he was on A&E status and then, several weeks later, advised the plaintiff he would have to wait until his next DOC institution. Even if Dr. Schettle told the plaintiff he would repair the dentures and then later fell back on the DOC policy regarding care for A&E inmates, that is a broken promise, not deliberate indifference. After his August 11, 2005, evaluation of the plaintiff's dentures, Dr. Schettle acknowledged the plaintiff's complaints, identified that the dentures were in need of partial repair, and included in the plaintiff's file that the dentures were to be repaired at the plaintiff's next DOC institution. Dr. Schettle classified the plaintiff's need as "routine," which is the norm for denture repairs. Therefore, he was simply following DOC policy when he told the plaintiff he would have to wait to be treated at his next institution.

The plaintiff may disagree with Dr. Schettle's classification, but that does not mean that Dr. Schettle was deliberately indifferent to the plaintiff. As stated previously, disagreement with dental professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard. *Ciarpaglini*, 352 F.3d at 331.

### 3. Policy Claim Against Jess and De Lap

The plaintiff challenges the DCI and DOC policy set forth in POC-14, which is entitled "Dental Services Available During Incarceration." He argues that this policy is unconstitutional because the limitations on dental care for DCI inmates in A&E status caused a delay in the repair of his dentures.

In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." In *Turner*, the Supreme Court identified four factors that bear on the reasonableness of the impinging regulation: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is a ready alternative to the policy "that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 89-91.

A close review of the plaintiff's argument reveals that he is not challenging the policy itself. Rather, he is again attacking Dr. Schettle's classification of his need for denture repair as "routine." It was not the policy, but Dr. Schettle's classification of his need for denture repair as "routine," that prevented the plaintiff from receiving treatment at DCI. The plaintiff does not dispute that he would have received

13

treatment at DCI if his need for denture repair had been deemed an "emergency" or "urgent dental need." Therefore, the court's conclusion that Dr. Schettle was not deliberately indifferent when he classified the plaintiff's need as "routine" controls and the court need not go through the *Turner* analysis. The defendants are entitled to summary judgment on this claim.

### 4.    Claim Against Farrey and De Lap

Finally, the plaintiff argues that NLCI Warden Catherine Farrey and DOC Dental Coordinator Barbara De Lap failed to maintain an adequate dental staff at NLCI, which resulted in an unconstitutional delay in the repair of the plaintiff's dentures. The DOC defendants maintain that the plaintiff did not experience an unreasonable delay before his dentures were repaired and that the record does not contain evidence that the delay was unusual or excessive or that it caused any additional unnecessary suffering for the plaintiff.

The plaintiff sets forth a time line of the dental treatment he received at NLCI and asserts that it constitutes an unconstitutional delay in treatment. The plaintiff arrived at NLCI October 11, 2005, and submitted an emergency dental service request that mentioned "major pain and discomfort" from his broken dentures. He was advised that there was no staff dentist at NLCI, but he could submit a Health Services Unit (HSU) request for his "major pain." The plaintiff subsequently treated with Dr. Marinac, who agreed to repair his dentures, but had to order special materials to do so. When the plaintiff did not hear back from Dr. Marinac, he submitted a follow up dental service request on December 20, 2005. In response,

14

he was advised that Dr. Marinac no longer worked at NLCI. The plaintiff was seen by a dentist in January 2006, his dentures were sent out for repair, and they were fixed by the first week in February.

The plaintiff argues that he had a serious dental condition that caused him pain and that he did not receive prompt treatment. He asserts that his delay in receiving treatment was deliberate because it was due to inadequate staff. Defendant De Lap avers that she "had knowledge that NLCI was without a dentist on-site at the time of plaintiff's request for dental services, and made arrangements for a dentist to cover urgent dental problems on a weekly basis." (Affidavit of Barbara De Lap, ¶ 8). She also affirms that a four-month wait for routine dental care is common and urgent needs are given priority on a daily basis. (*Id.* at ¶ 7). Again, the issue returns to Dr. Schettle's classification of the plaintiff's need for denture repairs as "routine." Once he arrived at NLCI, the plaintiff was not seen sooner because his dental need (while serious) was not urgent or an emergency.

Moreover, the plaintiff's claim is based on a delay in treatment, and his only evidence of harm resulting from the delay are his subjective allegations of pain. In cases where prison officials delayed rather than denied medical assistance to an inmate, "a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Expert testimony is not required to satisfy the requirement. Yet "evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's

condition or otherwise harmed him." *Id.* at 715. In *Williams*, the evidence fell "somewhere in between a bare recitation of treatment received and expert testimony about the delay's effect." *Id.* The Seventh Circuit concluded:

> Although no jury could determine, based on this record, whether it was the delay in care or the underlying condition that necessitated Williams' treatment or affected his ability to work, a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated Williams' pain and unnecessarily prolonged his high blood pressure.

*Id.* at 715-16. The plaintiff has not presented any evidence regarding increased pain or additional harm that resulted during the less than six months between the plaintiff's initial examination and the completion of the denture repairs. Specifically, the plaintiff has presented no evidence of harm from his arrival at NLCI in mid-October 2005 until his dentures were repaired in early February 2006.

Further, the plaintiff may have exacerbated the delay in treatment. The November 9, 2005 response to the plaintiff's November 2, 2005 inmate complaint alleging lack of dental care (NLCI-2005-33760) states:

> Dr. Marinac and Ms. Killian were contacted in regards to this complaint. They stated that the inmate was seen and informed that the quickest way to fix his dentures was to send them out. However the inmate did not want to be without his dentures while they were sent out. Dr. Marinac stated that she would attempt to fix the dentures on site to accommodate this inmate's request (even though this is not normal protocol). At the current time they are waiting on supplies to arrive to fix the denture.

16

This documents that the plaintiff could have had his dentures repaired earlier, but he chose not to because he did not want them sent out of the prison.[3]  Thus, much of the delay after the plaintiff arrived at NLCI was not caused by actions of the defendants.  Rather, it stemmed from the plaintiff's disagreement with the treatment offered.  *See Ciarpaglini*, 352 F.3d at 331.  For the foregoing reasons, the court will grant summary judgment in favor of the DOC defendants on all three of the plaintiff's claims against them.

## MOTION FOR SUMMARY JUDGMENT - SCHOLKE

Defendant John Scholke filed a motion for summary judgment regarding Holton's claim that Scholke was deliberately indifferent to his serious dental need while he was housed at the Sheboygan County Detention Center (the "Detention Center").  Scholke contends that Holton failed to exhaust his administrative remedies regarding any claim against Scholke.  Moreover, Scholke asserts that he was not deliberately indifferent to Holton's serious dental need.

1.    **Background**

On September 9, 2005, Holton, a prisoner in the custody of the DOC, was transferred to the Detention Center for temporary housing before permanent assignment to a DOC prison.  (SPFOF ¶¶ 1-2).  Holton remained at the Detention Center until October 7, 2005.  (SPFOF ¶ 3).  Defendant John Scholke is a retired captain with the Sheboygan County Sheriff's Department; he was the jail administrator for the Sheboygan County Jail and the Detention Center from 1999 to

---

[3]Ultimately, after Dr. Marinac left NLCI, the plaintiff allowed his dentures to be sent out for repair.

2006. (SPFOF ¶¶ 4-5). The Detention Center housed state prisoners pursuant to a contractual arrangement with the DOC. (SPFOF ¶ 6). The contract provides that the county shall operate an inmate grievance process and maintain accurate records that are available to the DOC upon request. (Scholke Declaration, Ex. A, p. 6).

On September 13, 2005, registered nurse Nancy Knapp examined the plaintiff and concluded that he was not in need of acute care. (SPFOF ¶ 23). Under Sheboygan County's contract with the DOC, DOC inmates only receive medical treatment that is immediately necessary when temporarily detained in a county facility. (SPFOF ¶ 31). Nurse Knapp concluded that the plaintiff did not have a dental condition that required immediate attention because the plaintiff did not have an infection or an abscess, his mouth was not swollen and his gums were not bleeding. (SPFOF ¶¶ 24-28, 30). Nurse Knapp granted the plaintiff the privilege of obtaining ibuprofen for pain as necessary, but he elected to ask for it on only one occasion. (SPFOF ¶ 30).

Some time before September 26, 2005, the plaintiff wrote to Captain Scholke to complain that his denture was not being immediately repaired. (SPFOF ¶ 32). Captain Scholke reviewed Holton's correspondence and investigated the plaintiff's complaint by contacting Nurse Knapp. (SPFOF ¶¶ 33-34). Captain Scholke learned that Nurse Knapp was aware of the plaintiff's concern and had previously assessed Holton's condition. (SPFOF ¶ 35). Captain Scholke was also aware that the plaintiff had been assessed by a DOC dentist prior to his arrival at the Detention Center. (SPFOF ¶ 37). Captain Scholke relied on those professional assessments. (SPFOF

¶ 37).  He believed that the plaintiff's dental concern had been professionally assessed and that a plan of action was in place for it to be addressed in the near future.  (SPFOF ¶¶ 36-37).  On September 26, 2006, Captain Scholke responded in writing to Holton that the DOC would take care of his dental concerns when he moved on to the next facility.  (SPFOF ¶ 38).

Holton does not dispute that the grievances at issue in this litigation are NLCI-2005-33758, NLCI-2005-33760 and NLCI-2006-18.  (SPFOF ¶ 9).  The complaints were all filed while Holton was at NLCI, and none of them reference Captain Scholke or his alleged misconduct.  (SPFOF ¶¶ 10-15, 17-18).  Holton argues that inmate complaint NLCI-2005-33758 is based on a continuing wrong which began at DCI and is ongoing.

Holton does not dispute that he failed to fully exhaust inmate complaints NLCI-2005-33758 and NLCI-2005-33760 by appealing the initial dismissal of his grievances to DOC administrators in Madison.  (SPFOF ¶ 16).  He adds that he made the mistake of filing his appeal on the wrong form and mailing it to Madison.  Holton notes that he was not informed of his error until after his time to appeal had expired.

2.    **Exhaustion**

Captain Scholke spends a considerable amount of time and energy arguing that the plaintiff failed to exhaust his administrative remedies because none of the inmate complaints the plaintiff filed at NLCI reference him by name.  Captain Scholke argues that the plaintiff was subject to the DOC's inmate complaint

19

procedures even while he was housed at the Detention Center and that he failed to timely submit an inmate complaint against Captain Scholke.

However, the contract between Sheboygan County and the DOC explicitly provides: "The County shall operate an inmate grievance process. Accurate records shall be maintained and available to the DOC upon request." (Scholke Dec. Ex. A, p. 6). Scholke has not provided information regarding the Detention Center's grievance process. It is, therefore, possible that the plaintiff's written communication to Scholke and Scholke's written response was sufficient to exhaust the plaintiff's administrative remedies. It is a defendant's burden to establish that a plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Scholke has not satisfied that burden. The court will address the merits of the plaintiff's Eighth Amendment claim against Scholke.

**3.    Eighth Amendment Claim**

Captain Scholke contends that the plaintiff did not have a serious medical (or dental) need and, in any event, that he was not deliberately indifferent to the plaintiff's complaints or his dental condition.

Captain Scholke first argues that the plaintiff did not have a serious medical need. He maintains that a need for a denture repair, standing alone, does not constitute a serious medical need and cites a number of cases of serious dental needs, which include symptoms like lost teeth, inability to eat, decayed and cracked teeth, headaches, abscessed teeth, infections and extreme pain.

Based on the plaintiff's averments regarding his pain, and viewing the evidence in the light most favorable to the non-moving party, as well as Dr. Schettle's determination that the denture needed repair, the court will assume that the plaintiff has a serious dental need under the Eighth Amendment. See *Wynn*, 251 F.3d at 593. Therefore, the only inquiry necessary is whether Captain Scholke was deliberately indifferent to the plaintiff's serious dental need.[4]  *See id.*

Even viewed in the light most favorable to the non-moving party, the plaintiff has not presented evidence of deliberate indifference by Captain Scholke.  Upon receipt of the plaintiff's complaint, Captain Scholke investigated the situation and learned that Nurse Knapp had already evaluated the plaintiff's dental needs and determined the plaintiff did not need immediate care while he was housed at the Detention Center.  Captain Scholke, a non-medical and non-dental defendant, was entitled to defer to the professional judgment of medical and dental staff.  *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (The policy supporting this presumption is sound and follows naturally from the division of labor within a prison.).  A reasonable jury could not conclude that Captain Scholke was deliberately indifferent to the plaintiff's serious medical need because Captain Scholke thoroughly investigated the situation and reasonably relied on the professional judgment of Dr.

---

[4]The conclusion that the plaintiff has a serious medical need does not automatically lead to the conclusion that he was in need of immediate dental care under the standard Nurse Knapp applied to determined whether the plaintiff needed immediate treatment while at the Detention Center.

Schettle and Nurse Knapp.[5]  *See id.*  Captain Scholke was not deliberately indifferent to the plaintiff's serious dental need and the court will, therefore, grant his motion for summary judgment.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to amend the caption (Docket #56) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (Docket #56) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall update the docket in this case to reflect that Cathy Jess has replaced John Bett as a defendant to this action;

**IT IS FURTHER ORDERED** that the Clerk of Court shall update the docket in this case to reflect that John Doe 1 has been identified as John Schettle, and John Doe 2 has been identified as Barbara De Lap, DOC Dental Administrator;

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel discovery (Docket #66) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion to strike the plaintiff's proposed findings of fact (Docket #61) be and the same is hereby **DENIED as moot**;

---

[5]Moreover, the plaintiff admits that his dentures were repaired by February 2, 2006.  He, therefore, alleges only a delay in treatment.  Relative to Captain Scholke, that delay was only from September 26, 2005, when Captain Scholke denied the plaintiff immediate dental care, until October 7, 2005, when the plaintiff was transferred out of the Detention Center.  The plaintiff has presented no medical evidence of a detrimental effect from a delay in the repair of his dentures.  *See Williams*, 491 F.3d at 714-16.  The court need not decide whether a reasonable jury could determine that a delay of less than two weeks was a constitutional violation.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by the DOC defendants (Docket #82) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Captain Scholke (Docket #90) be and the same is hereby **GRANTED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:07-cv-00402-JPS   Filed 03/12/09   Page 23 of 23   Document 116